IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Kevin Tinsley, ) | Case No. 8:12-cv-00264-RBH-JDA |
| ) | |
| Plaintiff, ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| v. ) | |
| ) | |
| FCI Bennettsville; M. Snuggs; R. McCoy; ) | |
| P. Parker, a/k/a Gary Parker; L. Ostgard; ) | |
| Warden Drew; T. McCoy, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This matter is before the Court on a motion for summary judgment filed by Defendants FCI Bennettsville, M. Snuggs ("Snuggs"), P. Parker ("Parker"), L. Ostgard ("Ostgard"), Warden Drew ("Drew"), and T. McCoy ("T. McCoy") [Doc. 60] and a motion to dismiss or, alternatively, a motion for summary judgment filed by Defendant R. McCoy ("R. McCoy") [Doc. 84]. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(e), D.S.C., this magistrate judge is authorized to review all pretrial matters in pro se cases and to submit findings and recommendations to the District Court.

## PROCEDURAL HISTORY

Plaintiff, proceeding pro se, filed this action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), on January 19, 2012.[1] [Doc. 1.] Plaintiff named FCI Bennettsville, M. Snuggs, R. McCoy, P. Parker, and L. Ostgard as defendants. [*Id.*] On April 4, 2012, Plaintiff submitted service documents for

---

[1] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing date in the light most favorable to Plaintiff, this action was filed on January 19, 2012. [Doc. 1-4 (envelope marked as processed on January 19, 2012 by prison mail room).]

these defendants [Doc. 24], but Plaintiff also submitted an Amended Complaint naming Warden Drew as an additional defendant and indicating that he misspelled one officer's name and the officer's real name is T. McCoy [Doc. 23]. Accordingly, the Court issued an Order directing the Clerk to (1) terminate R. McCoy as a defendant; (2) add Warden Drew and T. McCoy as defendants; (3) issue the summonses for Defendants FCI Bennettsville, M. Snuggs, P. Parker, L. Ostgard, Warden Drew, and T. McCoy; and (4) provide the United States Marshal's Service with the service documents for service of process. [Doc. 29.]

On May 2, 2012, Plaintiff filed a motion to amend/correct the Amended Complaint to correct the names of the defendants. [Doc. 40.] In his motion, Plaintiff referred to both R. McCoy and T. McCoy but appeared to present allegations against only R. McCoy; additionally, Plaintiff requested to correct Defendant P. Parker to G. Parker. [*See id.*] Because of the ambiguity in Plaintiff's allegations regarding R. McCoy and T. McCoy, the Court issued an Order requesting Plaintiff to submit a list of the individuals Plaintiff intended to name as defendants in this action. [Doc. 41.]

On May 24, 2012, the executed summons forms were added to the docket; the forms indicated T. McCoy was served on May 10, 2012. [Doc. 50.] None of the executed summonses indicated a defendant was improperly identified or there was otherwise a problem in executing any summons. [*See id.*] On May 30, 2012, Plaintiff responded to the Court's Order regarding the defendants in this action by providing the following list of defendants: G. Parker, R. McCoy, M. Snuggs, L. Ostgard, and D. Drew. [Doc. 57.] However, based on the executed summonses, the Court believed the proper defendants

2

had been served and, therefore, denied Plaintiff's motion to correct the names of the defendants on June 4, 2012.[2] [Doc. 58.]

On July 9, 2012, FCI Bennettsville, T. McCoy, Ostgard, Parker, Snuggs, and Drew filed a motion for summary judgment. [Doc. 60.] Throughout the memorandum in support of the motion, these Defendants noted Plaintiff's allegations against R. McCoy and pointed out that R. McCoy was not a named defendant in this action. [*See, e.g.*, *id.* at 2 & n.4.] These Defendants also noted Plaintiff's allegations against T. McCoy. [*See, e.g.*, *id.* at 3 & n.7.] Therefore, the memorandum clarified that Plaintiff's allegations concern two officers with the last name McCoy.[3]

Because Plaintiff had attempted to identify the proper defendants to this action but, through no fault of his own, did not succeed in bringing this action against R. McCoy, R. McCoy was reinstated as a defendant to this action, and defense counsel accepted service for R. McCoy. [Docs. 73, 82.] On November 19, 2012, R. McCoy filed a motion to dismiss or, alternatively, a motion for summary judgment. [Doc. 84.]

For each motion filed by Defendants, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. [Docs. 61, 85.]

---

[2] The Court was under the impression that the last names McCoy and Parker sufficiently identified the defendants in this action because Plaintiff had referred to both R. McCoy and T. McCoy and P. Parker and G. Parker, but the summonses as to P. Parker and T. McCoy were successfully executed. The Court believed Plaintiff was unsure of the correct first initial of one person with the last name McCoy and one person with the last name Parker but that the executed summonses indicated Plaintiff's uncertainty did not prevent service upon the proper defendants.

[3] Defendants FCI Bennettsville, T. McCoy, Ostgard, Parker, Snuggs, and Drew also pointed out that no one named P. Parker has worked in the relevant area of FCI Bennettsville, and therefore, they substituted Gary Parker, who worked in the relevant area during the relevant time period. [Doc. 60 at 2 n.3.]

3

Plaintiff has filed responses in opposition [Docs. 63, 87] and additional attachments [Docs. 64, 67]. FCI Bennettsville, T. McCoy, Ostgard, Parker, Snuggs, and Drew have also filed a reply to Plaintiff's response to their motion. [Doc. 65.] Accordingly, Defendants' motions are ripe for review.

## BACKGROUND

Plaintiff generally alleges that, while he was an inmate at FCI Bennettsville, T. McCoy, R. McCoy, Ostgard, Parker, and Snuggs sexually harassed him and that Plaintiff told Drew about certain instances of harassment, but Drew did nothing to correct the officers' behavior. [Docs. 1, 9, 23, 40.] Specifically, Plaintiff alleges Snuggs, R. McCoy, and Parker sexually harassed him and taunted and made gestures to Plaintiff and his cellmate. [Doc. 1 at 1; Doc. 23 at 4.] Plaintiff alleges he showed Drew that he and his cellmate had "women name tags" above their cell door, and Drew told officers[4] to change the name tags because those were not the inmates' names. [Doc. 1 at 1; Doc. 23 at 4; Doc. 40 at 2–3.] Plaintiff also alleges officers gave him pinkish colored underwear that was too small for him and that the officers said the underwear would look good on him[5]; when he showed the undergarments to Drew, she said they were cute. [Doc. 1 at 1; Doc. 23 at 4; Doc. 40 at 3.] Plaintiff also alleges Parker and R. McCoy would imitate having sex or rape in front of Plaintiff's cell and that R. McCoy stated "that's why the guy is taking us to court." [Doc. 1 at 1; Doc. 40 at 3–4.] Plaintiff alleges Snuggs called Plaintiff names and made comments insinuating Plaintiff was gay. [Doc. 1 at 1; Doc. 40 at 3.]

---

[4] Plaintiff does not specify who Drew told to change the name tags.

[5] Plaintiff does not specify who gave him the underwear or said it would look good on him.

4

Plaintiff alleges Ostgard and S. Chapman[6] retaliated against him by leaving him in handcuffs for 40 minutes. [Doc. 9 at 1; Doc. 23 at 1.] Plaintiff also alleges Ostgard threw Plaintiff's food on the floor and broke Plaintiff's glasses by picking them up and dropping them on the floor. [Doc. 9 at 1; Doc. 23 at 2.] Additionally, Plaintiff alleges R. McCoy retaliated against him by not giving him a dinner meal. [Doc. 9 at 1–2; Doc. 23 at 2.] Plaintiff alleges Drew committed misconduct and acted unprofessionally by never correcting the officers or ordering an investigation. [Doc. 9 at 2; Doc. 23 at 4.]

Further, Plaintiff alleges Ostgard said in front of other officers, including T. McCoy, that Plaintiff was another officer's lover and that T. McCoy said he believed Ostgard. [Doc. 23 at 5; Doc. 40 at 4.] Plaintiff alleges Ostgard grabbed Plaintiff "down there by [his] buttocks area" instead of by the arm to escort him to Rec, and Plaintiff asked Ostgard several times to grab him by his arm.[7] [Doc. 23 at 5–6, 7; Doc. 40 at 4.]

Plaintiff seeks $100,000 from Ostgard, $50,000 from R. McCoy, $50,000 from Parker, and $50,000 from Snuggs. [Doc. 23 at 7–8.] Plaintiff also asks that he be treated fairly, and he requests an investigation regarding his allegations and to be transferred to another facility.[8] [Doc. 1 at 2.]

---

[6] S. Chapman is not named as a defendant to this action.

[7] Plaintiff has also submitted letters stating he believes his mail is being opened before he receives it and that R. McCoy, Ostgard, and Snuggs have been harassing him. [Docs. 16, 17, 38, 49, 49-1, 49-2, 75.]

[8] The Court notes Plaintiff is currently confined at the Beckley Federal Correctional Institution in Beaver, West Virginia. [*See* Doc. 83 (notice of change of address).]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under *Bivens***

In *Bivens*, the Supreme Court established a direct cause of action under the Constitution of the United States against federal officials for the violation of *federal* constitutional rights. 403 U.S. at 389. A *Bivens* claim is analogous to a claim under 42 U.S.C. § 1983[9]; federal officials cannot be sued under § 1983, however, because they do not act under color of *state* law. *Harlow v. Fitzgerald*, 457 U.S. 800, 814–20 (1982). Case law involving § 1983 claims is applicable in *Bivens* actions and vice versa. *See Farmer v.*

---

[9]Section 1983 provides a private cause of action for plaintiffs alleging constitutional violations by persons acting under color of state law.

6

*Brennan*, 511 U.S. 825 (1994); *Mitchell v. Forsyth*, 511 U.S. 511, 530 (1985); *Turner v. Dammon*, 848 F.2d 440, 443–44 (4th Cir. 1988).  To establish a claim under *Bivens*, a plaintiff must prove two elements: (1) the defendant deprived the plaintiff of a right secured by the Constitution and laws of the United States and (2) the defendant did so under color of federal law.  *See Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted) (setting forth requirements for a § 1983 claim under color of state law); *see also Bivens*, 403 U.S. at 389 ("In [a previous case], we reserved the question whether violation of [the Constitution] by a federal agent acting under color of his authority gives rise to a cause of action for damages consequent upon his unconstitutional conduct.  Today we hold that it does.").

**Motion to Dismiss Standard**

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) "should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support [his] claim and would entitle [him] to relief. In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  In addition to the complaint, the court "may consider documents attached to the complaint . . . so long as they are integral to the complaint and authentic." *Sec'y of State for Def., v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir 2007) (citing Fed. R. Civ. P. 10(c)).[10]

---

[10] Plaintiff attached the following documents to his Complaint which the Court has considered in construing Plaintiff's allegations: the EEOC right-to-sue letter [Doc. 1-1]; Plaintiff's EEOC Charge [Doc. 1-2]; and a Duncan Police Department Trespass Notice and Incident Report [Doc. 1-3].  These documents are integral to the Complaint and appear to be authentic.

7

With respect to well-pleaded allegations, the Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . .

550 U.S. 544, 555 (2007) (internal citations omitted); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citing *Twombly*, 550 U.S. at 556)); *E. Shore Mkts., Inc. v. J.D. Assocs., Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (noting that court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments"); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

**Summary Judgment Standard**

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

9

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

**Sovereign Immunity**

As an initial matter, the Court notes *Bivens* claims for damages are not actionable against the United Sates, federal agencies, or public officials acting in their official capacities. *See FDIC v. Meyer*, 510 U.S. 471, 486 (1994) (declining to extend a *Bivens* remedy to federal agencies); *see also Doe v. Chao*, 306 F.3d 170, 184 (4th Cir. 2002) (noting "a *Bivens* action does not lie against either agencies or officials in their official capacity"). However, sovereign immunity does not bar damages actions against federal officials in their individual capacities for violation of an individual's constitutional rights. *Gilbert v. Da Grossa*, 756 F.2d 1455, 1459 (9th Cir. 1985) (citing *Davis v. Passman*, 442 U.S. 228 (1979)). Further, sovereign immunity is not a bar to actions seeking equitable relief. *Singletary v. Fallen*, No. 0:11-543-CMC-PJG, 2012 WL 368375, at *2–3 (D.S.C.

Jan. 17, 2012) (discussing relevant case and statutory law), *report and recommendation adopted by* 2012 WL 368364 (D.S.C. Feb. 3, 2012). Accordingly, to the extent Plaintiff asserts claims for damages against FCI Bennettsville and the individual Defendants in their official capacities, those claims should be dismissed, but the Court will consider Plaintiff's claims for equitable relief and Plaintiff's damages claims to the extent he has asserted such claims against the individual Defendants in their individual capacities.

**Exhaustion of Administrative Remedies**

Defendants contend they are entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies prior to filing this action.[11] [Doc. 60 at 5–13; Doc. 84 at 5–14.] Upon review, the Court agrees.

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until* such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). As the United States Supreme Court observed:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases

---

[11] Because R. McCoy presented to the Court matters outside the pleadings in his motion to dismiss/for summary judgment [*see* Doc. 84-1], which the Court did not exclude, and because Plaintiff received notice of the summary judgment procedure [Doc. 85] and had an opportunity to respond to the motion and the additional matters submitted with it [*see* Doc. 87], the Court has treated R. McCoy's motion to dismiss or, alternatively, for summary judgment as a motion for summary judgment, *see* Fed. R. Civ. P. 12(d).

11

> ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (internal citations and quotations omitted). Consequently, the PLRA's exhaustion requirement is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."[12]  *Id.* at 524, 532.  The exhaustion requirement applies even if the relief sought in the civil action is not available in the administrative proceedings.  *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

Exhaustion is defined by each prison's grievance procedure, not the PLRA; a prisoner must comply with his prison's grievance procedure to exhaust his administrative remedies.  *Jones v. Bock*, 549 U.S. 199, 218 (2007).  An inmate's failure to "properly take each step within the administrative process . . . bars, and does not just postpone, suit under § 1983."  *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002); *see also White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997) (upholding dismissal of an inmate's complaint because the inmate failed to proceed beyond the first step in the administrative grievance process).  *But see Jones*, 549 U.S. at 219–24 (rejecting "total exhaustion rule" and holding that when presented with a complaint containing exhausted and unexhausted claims, courts should "proceed[] with the good and leave[] the bad").

Exhaustion is an affirmative defense; an inmate is not required to plead exhaustion in his complaint.  *Jones*, 549 U.S. at 211–12; *Anderson v. XYZ Corr. Health Servs., Inc.*,

---

[12] The Supreme Court also explicitly stated that "federal prisoners suing under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), must first exhaust inmate grievance procedures just as state prisoners must exhaust administrative processes prior to instituting a § 1983 suit."  *Porter*, 534 U.S. at 524.

407 F.3d 674, 681 (4th Cir. 2005). However, to survive a motion for summary judgment asserting he failed to exhaust, the inmate is required to produce evidence in response to the motion that refutes the claim that he failed to exhaust. *See Hill v. Haynes*, 380 F. App'x 268, 270 (4th Cir. 2010) (unpublished opinion) (holding that "to withstand a motion for summary judgment, the non-moving party must produce competent evidence sufficient to reveal the existence of a genuine issue of material fact for trial" (citing Fed. R. Civ. P. 56(e)(2))); *see also Celotex*, 477 U.S. at 323–24 (stating that once the party seeking summary judgment demonstrates there is no genuine issue of material fact, the non-moving party, to survive the motion for summary judgment, must demonstrate specific, material facts exist that give rise to a genuine issue).

The Federal Bureau of Prisons ("BOP") has established an Administrative Remedy Program, 28 C.F.R. § 542.10, et seq., through which an inmate may seek formal review of issues or complaints relating to his confinement. The BOP's Administrative Remedy Program is generally a four-step grievance procedure. Usually, an inmate is required first to attempt to informally resolve his complaints with staff. 28 C.F.R. § 542.13. Then the inmate may submit a formal Administrative Remedy Request ("Request") to the warden; the inmate must attempt informal resolution and submit the Request within twenty calendar days of the event giving rise to his complaint. *Id.* §§ 542.14(a), (c)(4). An inmate who is not satisfied with the warden's response to the Request may appeal the decision within twenty days to the Regional Director. *Id.* § 542.15(a). The inmate may appeal the Regional Director's decision within thirty days to the General Counsel. *Id.* The administrative process is exhausted when the General Counsel issues a ruling on the

inmate's final appeal. *Id.* ("Appeal to the General Counsel is the final administrative appeal.").

Additionally, the BOP has set out when a Request or an appeal is considered filed and when an inmate should expect a response from the appropriate official:

> If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received. Once filed, response shall be made by the Warden or CCM within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days. If the Request is determined to be of an emergency nature which threatens the inmate's immediate health or welfare, the Warden shall respond not later than the third calendar day after filing. If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level. Staff shall inform the inmate of this extension in writing.

*Id.* § 542.18. The inmate may consider the absence of a response within the allotted response time, including any extension, to be a denial of the Request or appeal at that level. *Id.* Thus, an inmate has exhausted a given level of the grievance process, and may proceed to the next level, if he does not receive a response at that level within the allotted response time. However, as stated, the inmate must appeal his grievance to the General Counsel to completely exhaust his administrative remedies.

Here, Plaintiff failed to complete every step of the BOP's Administrative Remedy Program prior to filing this action, and therefore, this action is barred for Plaintiff's failure to exhaust. The record reflects that Plaintiff has filed grievances concerning every

14

allegation raised in this action, except for his allegations as to Drew,[13] but Plaintiff did not complete the grievance process prior to filing this action on January 19, 2012. [*See* Docs. 60-1, 84-1.]  For example, on December 28, 2011, Plaintiff filed a Request concerning (1) Ostgard and T. McCoy's comments that Plaintiff was another officer's lover and (2) Ostgard grabbing Plaintiff "down there by [his] buttocks" area rather than by his arm. [Doc. 60-1 at 19.] Drew issued a response on January 5, 2012. [*Id.* at 20.] Plaintiff instituted an appeal [*id.* at 21–22], which was received by the Regional Office on January 23, 2012 [*id.* at 23]. Thus, Plaintiff had exhausted only two of the four steps of the grievance process—informal resolution and Request—before he filed this action on January 19, 2012. Plaintiff did not complete the Administrative Remedy Program as to any claim he raises in this action prior to January 19, 2012 and, therefore, did not exhaust administrative remedies as to any of his claims.

Plaintiff contends (1) he has no knowledge of the law, is illiterate, and has poor comprehension and writing skills and needs assistance and (2) some of his grievances were found in an officer's desk months after he gave them to the officer to file.[14] [Doc. 63.] First, to the extent Plaintiff alleges his illiteracy impeded his ability to exhaust his

---

[13] There is no evidence in the record that Plaintiff filed any sort of grievance concerning Drew's alleged actions or inactions.

[14] To the extent Plaintiff included a motion for appointment of counsel in his response to the motion for summary judgment filed by Defendants FCI Bennettsville, T. McCoy, Ostgard, Parker, Snuggs, and Drew [*see* Doc. 63 at 3–4], the Court recommends Plaintiff's motion be denied. As stated in 28 U.S.C. § 1915(e)(1), the court may use its discretion to appoint counsel for an indigent in a civil action. *Smith v. Blackledge*, 451 F.2d 1201 (4th Cir. 1971). However, such appointment "should be allowed only in exceptional cases." *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975). Whether exceptional circumstances are present depends on the type and complexity of the case and the pro se litigant's ability to prosecute it. *Whisenant v. Yuam*, 739 F.2d 160 (4th Cir. 1984). The Court concludes exceptional circumstances warranting the appointment of counsel are not present in this case. Plaintiff has demonstrated an ability to present the issues he intends to litigate and has submitted numerous pleadings, letters, and other filings to the Court. Therefore, the Court recommends Plaintiff's motion for appointment of counsel, to the extent he has made such motion, be denied.

administrative remedies, an illiterate inmate must have asked for and been refused assistance in pursuing his administrative remedies before his illiteracy may excuse his failure to exhaust. *Billups v. Ozmint*, 2010 WL 4386949, at *3 (D.S.C. Sept. 30, 2010) (quoting 28 C.F.R. § 542.16(b)) (citing *Ramos v. Smith*, 187 F. App'x 152, 154 (3d Cir. 2006)), *report and recommendation adopted by* 2010 WL 4386948 (D.S.C. Oct. 29, 2010). Here, Plaintiff alleges he requested assistance from the warden in pursuing this action, not in pursuing his administrative remedies. [Doc. 63 at 1–2.] Further, Plaintiff has submitted Requests for most of his claims and has at least attempted to appeal those claims,[15] and the BOP has allowed Plaintiff to correct any filing errors [*see* Docs. 60-1, 84-1]; therefore, Plaintiff's illiteracy does not appear to be the cause for Plaintiff's failure to fully exhaust his claims before filing this action.

Second, to the extent Plaintiff alleges an officer's failure to file his grievances impeded his ability to exhaust, Defendants have acknowledged that four rejections were found in a drawer, and Plaintiff was permitted to refile them. [Doc. 65 at 1.] Further, the Court concludes that even if these four forms relate to incidents that are the subject of this litigation, Plaintiff could not have exhausted his claims prior to filing this action on January 19, 2012. Plaintiff filed Requests concerning the claims raised in this litigation on December 28, 2011, February 13, 2012, and February 23, 2012. [Doc. 60-1 at 19–51.] Therefore, the only claims Plaintiff could have possibly exhausted prior to January 19, 2012 were those raised in his grievances filed on December 28, 2011, and the record reflects that the Regional Office did not even receive Plaintiff's appeals of these grievances until

---

[15] As previously noted, there is no evidence in the record that Plaintiff filed a grievance concerning his allegations regarding Drew.

January 23, 2012.  [*Id.* at 23, 28, 32; Doc. 84-1 ¶ 8.]  Accordingly, the Court concludes Plaintiff has failed to demonstrate he exhausted his administrative remedies, or was prevented from exhausting, and the Court recommends Defendants' motions for summary judgment be granted.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends Defendants' motions for summary judgment [Docs. 60, 84] be GRANTED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin<br>United States Magistrate Judge

January 24, 2013
Greenville, South Carolina